United States District Court
Southern District of Texas

**ENTERED**

September 24, 2025

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Laterrance R.,[1] | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-24-255 |
| | § | |
| Frank J. Bisignano,[2] | § | |
| Commissioner of the | § | |
| Social Security Administration, | § | |
| *Defendant.* | § | |

### MEMORANDUM AND ORDER

Laterrance R. appeals the Social Security Administration Commissioner's final decision denying his social security benefits. ECF No. 1. Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 14; and the Commissioner's Response and Cross Motion for Summary Judgment, ECF No. 17. The parties consented to the jurisdiction of the undersigned magistrate judge for all purposes, including entry of final judgment. ECF Nos. 5, 6, and 7. The Commissioner's final decision is **AFFIRMED**.

### 1. *Procedural Posture*

Laterrance received supplemental security income benefits under Title XVI of the Social Security Act as a child due to attention deficit hyperactivity disorder and learning problems. Tr. 104, 122, 151. Laterrance's benefits ceased upon attaining age

---

[1] In light of guidance received from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which states that there are significant privacy concerns in social security cases, the court refers to the Plaintiff only by his first name and last initial.

[2] Frank Bisignano is the Commissioner of the SSA and is automatically substituted as a party under Federal Rule of Civil Procedure 25(d).

eighteen because, as of July 1, 2019, the Commissioner determined that Laterrance was no longer disabled under the disability rules for adults. Tr. 151.

Laterrance filed a request for reconsideration of his disability cessation, Tr. 157, which was denied on February 11, 2020. Tr. 171–80. After Laterrance requested an administrative hearing, administrative law judge (ALJ) Donald J. Willy held a hearing on August 2, 2021. Tr. 186, 873. Laterrance was not represented by counsel at that hearing. Tr. 878. The ALJ heard testimony from Laterrance; Laterrance's mother; Dr. Nancy Terrand, a medical expert (ME); Dr. Kweli Amusa, a second ME; and John Reno, a vocational expert (VE). Tr. 887, 903, 906, 911, 919.

Dr. Terrand testified about Laterrance's mental impairments. Tr. 906–11. Dr. Terrand testified that Laterrance's most recent IQ test was completed ten years prior to the hearing when Laterrance was a child and that the results of the testing likely provided an underestimate of his cognitive functioning and should be interpreted with some caution. Tr. 906. Dr. Terrand also testified that there were very few treatment records for her to consider as to Laterrance's attention deficit hyperactivity disorder (ADHD). Tr. 909.

 On August 16, 2021, the ALJ entered an unfavorable decision and found that Laterrance's disability ended on July 1, 2019, and that Laterrance had not become disabled again since that date. Tr. 122–138.

Laterrance requested a review of the ALJ's decision, which was granted on March 10, 2022. Tr. 143–45. The Appeals Council found that the ALJ erred because the "age 18 redetermination hearing decision contains an evaluation of opinion evidence pursuant to 20 CFR 416.927 (prior rules) instead of 20 CFR 416.920c (current rules)." Tr. 144. The Appeals Council vacated the

ALJ's decision and remanded the matter to the ALJ to "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations[.]" *Id.*

Upon remand from the Appeals Council, the ALJ held a hearing on August 23, 2022, but the record was incomplete. Tr. 43, 71–72. At that hearing, the ALJ ordered a consultative examination with additional testing including an IQ test. Tr. 64.

The ALJ held a supplemental hearing on May 8, 2023. Tr. 794–872. At the supplemental hearing, the ALJ heard testimony from Laterrance; ME Dr. Richard Cohen; and VE Rosalind Lloyd. Laterrance's counsel was present and was permitted to examine the witnesses. Tr. 841, 861.

Laterrance's counsel presented an opening statement discussing Laterrance's mental functioning and low IQ scores. Tr. 807–08. Laterrance's counsel highlighted his low grades in school and low verbal comprehension skills. Tr. 807, 810. Laterrance's counsel also emphasized that Laterrance had deficits in adaptive functioning prior to age 22, that he required special education in school, and that his attempt at college was an "abject failure." Tr. 810–13. Laterrance's counsel argued that Laterrance met, at a minimum, Listing § 12.05 for intellectual disorders. Tr. 812.

Laterrance testified that he was in special education with an Individualized Education Program in elementary, middle, and high school. Tr. 816–17. Laterrance stated that he has problems with reading, writing, and math, and that, even though he attended college for three years, he never completed more than his freshman year of classes. *Id.* Laterrance explained that he had six courses with failing grades, six courses with "Ds," and a cumulative college GPA of 0.97. Tr. 817–18. Laterrance was

eventually suspended for poor academic performance after being put on academic probation three times in college. Tr. 819.

Laterrance testified that he previously worked several jobs, but that he was eventually fired from each because he could not sufficiently perform the job duties. Tr. 821–29. Laterrance was fired from Johnny's Pizza House because they did not have any jobs he could complete, including making pizzas and delivering pizzas. Tr. 822. Laterrance was fired from UPS because he made mistakes when loading and scanning boxes onto trucks. Tr. 823. Laterrance was fired from Walmart, where he made mistakes moving boxes and stocking shelves. Tr. 824–27. Laterrance was also fired from National Carriers, Inc., where he was training to drive large semi-trucks because he could not properly complete the pre-trip inspection of the vehicle. Tr. 828. Laterrance was shown how to complete the inspection more than twenty times, but he could not understand how to do it correctly. Tr. 829. Laterrance also stated that he was not working as of the date of the hearing. Tr. 830. The ALJ stated that Laterrance did not have any past relevant work. Tr. 830.

The ALJ and Laterrance's counsel examined Dr. Cohen, the ME. Tr. 830, 841. The ALJ stated that the ME's testimony was necessary to summarize new information, including the new consultative examination, in the case. Tr. 831. The ME testified that Laterrance's current severe impairments were attention deficit disorder with hyperactivity and borderline intellectual functioning. Tr. 831. The ME stated that during the first IQ test done in 2011, which resulted in a score of 68, the examiner reported that Laterrance did not put forth his best effort and that it was likely the results provided an underestimate of his current level of cognitive functioning. Tr. 831–32.

Laterrance underwent a consultative psychological examination, including an IQ test, with Nicole Dorsey, Ph.D. on

September 10, 2022. Tr. 746. The ME stated that the second IQ test, which resulted in a score of 64, likely represented Laterrance's best effort, but that Laterrance was easily distracted during the testing. Tr. 832; *see also* Tr. 742.

The ME explained that Listing 12.05 (intellectual disorders) was never considered in Laterrance's testing and that there was no evidence in the record that Laterrance met Listing 12.05. Tr. 836, 842. The ME stated that the clinicians did not diagnose Laterrance with an intellectual disorder. Tr. 844. The ME explained that a person's ability to focus can affect their IQ score, and that if a person has an attention deficit disorder, they might be able to take medication to address that issue, which might improve their IQ score. Tr. 847–48. The ME stated that Laterrance's score is 68, which is two standard deviations below the mean. Tr. 849.

The ME stated that he considered Listing 12.11 (neurodevelopmental disorders). Tr. 834. The ME stated that there was no evidence in the record showing that Laterrance met the 12.11A criteria. Tr. 835–36. The ME stated several times that there was insufficient evidence in Laterrance's record because there were no psychiatric treatment records, and there were only two consultative examinations in the record. Tr. 838, 831, 833. According to the ME, in utilizing and applying information, Laterrance is moderately impaired. Tr. 836. In interacting with others, the Laterrance is mildly impaired. Tr. 836–37. In his ability to concentrate, persist, or maintain pace, Laterrance is moderately impaired. Tr. 837. In adapting or managing oneself, Laterrance is moderately impaired. *Id.* The ME also stated that the records show that, at one point, Laterrance was using marijuana every other day, which can affect IQ scores and focus. *Id.* (citing Tr. 661–62).

The ME explained that he would limit Laterrance to simple, repetitive tasks. Tr. 837. Subject to that limitation, the ME stated

that there are no records showing that Laterrance has any issues with maintaining socially acceptable standards of neatness and cleanliness, responding appropriately to changes in the work setting, tolerating normal levels of stress, maintaining attention or concentration for extended periods of time, sustaining an ordinary routine without special supervision, interacting appropriately with the public, making simple decisions and judgments, and maintaining the requirements for attending work and being on time at work. Tr. 838–40.

The ME, Dr. Cohen, also stated that he agreed with Dr. Dorsey's evaluation of Laterrance's functional capacity. Tr. 850. It was clear to the ALJ, however, that the two doctors were recommending two different RFCs. The following exchange took place at the hearing.

> Q: [ATTY] So I was asking -- I was starting to ask another question. You agree with Dr. Dorsey's evaluation of my clients functional capacity?
>
> A: [Dr. Cohen] Yes. The medical source statement, his ability to do work related activities.
>
> Q: That's another way of saying it.
>
> A: I have no reason not to agree with it. . . .
>
> ALJ: Counsel, just a minute.
>
> ATTY: [] yeah, Judge.
>
> ALJ: Counsel, you can certainly ask him any other questions but one thing that you haven't really asked him about is even assuming that he doesn't agree on the 12.05 what the record demonstrates the mental residual functional capacity limitations there.
>
> ATTY: Well --
>
> ALJ: Because he's just named simple, repetitive tasks which is, you know, one limitation but there may be other limitations that you would desire to pursue.

ATTY: Well, I just did in my last question to Dr.
Cohen. I asked him if he agreed with Dr. Cohen
-- Dr. Dorsey's evaluation of the claimant's
functional capacity. And then he --

ALJ: But obviously he doesn't

ATTY: -- stated --

ALJ: -- because he didn't give that limitation. He just
gave one limitation, simple, repetitive tasks.

ATTY: Well, I -- instead of going through each one of
the points that Dr. Dorsey makes I just asked
him and he said he's repeatedly told us that he's
reviewed the entire record. So I asked him if he
agreed with Dr. Dorsey's evaluation of the
claimant's functional capacity. . . . [T]hen he
agreed.

Tr. 850–52.

The ALJ examined the VE and found that Laterrance did not
have any past relevant work. Tr. 857. The ALJ asked the VE to
consider a person who could perform work at the medium physical
exertion level limited to performing simple, repetitive work. Tr.
857. The VE stated that, based on the Dictionary of Occupational
Titles, the Bureau of Labor Statistics, the Texas Workforce
Commission, labor market research, and the U.S. census bureau,
such a person could perform medium, unskilled, SVP level 2 jobs
such as laundry worker, patient transporter, and dining room
attendant. Tr. 857–59.

The VE explained that, based on her personal experience, a
successful person in these jobs would need to be on task 90% of the
time and may only be absent one day per month. Tr. 858. A person
in these positions would be allowed two fifteen-minute breaks per
day, one in the morning and one in the afternoon, and a lunch
break. Tr. 858–59. The patient transporter and dining room
attendant jobs each require public contact. Tr. 859–60. Each job
the VE listed is at a "lower stress level." Tr. 860.

According to the VE, if a person required frequent breaks outside the normal number, they would not be able to sustain competitive employment. Tr. 861. If a person had problems maintaining effective social interaction on a consistent and independent basis with supervisors, that would preclude the person from sustaining competitive employment. Tr. 861. The VE stated that a person requiring vocational training or job placement services would generally need accommodations in the workplace and such a person would not be capable of competitive employment. Tr. 862. After completing the initial training period for a job, if a person needed to be retrained or reoriented to some aspect of their job duties once per week, they would not be capable of competitive employment. Tr. 863.

The ALJ entered his decision on July 6, 2023. Tr. 11–35. The ALJ found that Laterrance's disability ended on July 17, 2019, and that Laterrance did not become disabled again after that date. Tr. 35. Laterrance requested review of the ALJ's decision, which the Appeals Council denied on October 26, 2023. Tr. 1. Laterrance timely filed a complaint and an application to proceed in forma pauperis in federal court on December 21, 2023. *See Laterrance v. Comm'r of Soc. Sec.*, 4:23-mc-02269, ECF No. 1 (S.D. Tex. Dec. 21, 2023).

## 2. *Legal Standards*

The Social Security Act provides supplemental security income to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. § 1382. An individual is disabled when he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

If an individual was eligible for SSI disability benefits as a child, the Social Security Administration must redetermine that individual's eligibility under the rules for adults when the individual turns eighteen. 20 C.F.R. § 416.987.

The Commissioner typically uses a sequential, five-step approach to determine whether an adult claimant is disabled.[3] *Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 416.920(a)(4).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co.*

---

[3] This process is slightly altered for disability redeterminations for individuals who attain age eighteen, as discussed herein. 20 C.F.R. § 416.987(b) ("When we redetermine your eligibility, we will use the rules for adults (individuals age 18 or older) who file new applications explained in § 416.920(c) through (h). We will not use the rule in § 416.920(b) for people who are doing substantial gainful activity, and we will not use the rules in § 416.994 for determining whether disability continues.").

*of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 3. *Analysis*

#### A. *Step One*

Typically, at step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). This step, however, is not used for redetermining disability at age eighteen. 20 C.F.R. § 416.987(b).

#### B. *Step Two*

At step two, the ALJ determines whether any of the claimant's impairments or any combination thereof is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii) (citing 20 C.F.R. § 416.909). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). "An impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Johnson v. Colvin*, 595 F. App'x 443 (5th Cir. 2015) (quoting *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)). "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)); *see also* 20 C.F.R. § 416.920(c).

The ALJ found that Laterrance had severe impairments of ADHD; borderline intellectual functioning; and history of a learning disorder. Tr. 16. The ALJ found that Laterrance had non-severe impairments related to his sinuses and tonsils, as well as gynecomastia. These findings are not in dispute.

### C. Step Three

At step three, the ALJ determines if any of the claimant's severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). 20 C.F.R. § 416.920(a)(4)(iii); *see also* 20 C.F.R. Part 404, Subpt. P, App. 1. The Listing describes impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. § 416.925(a). If all the criteria of a Listing section are met or equaled, the claimant is considered disabled. 20 C.F.R. § 416.920(d); *Whitehead*, 820 F.3d at 780–81. The claimant has the burden of establishing that an impairment meets or equals the specified medical criteria. *Id*.

The ALJ found that Laterrance did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Listing. Tr. 17–24. The ALJ considered Listing section 12.05 for intellectual disorders and section 12.11 for neurodevelopmental disorders and determined that Laterrance's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of either Listing. Tr. 17–18.

Listing section 12.05 has its criteria set forth in paragraphs A and B. Listing § 12.05. To be found disabled at this step, a claimant's mental disorder must satisfy the requirements of *either* paragraph A or paragraph B. *Id.* The ALJ found that Laterrance did not meet the paragraph A requirements of Listing 12.05 because he did not exhibit either significantly subaverage general intellectual functioning, or significant deficits in adaptive functioning. Tr. 21–22. The claimant must meet requirements 1, 2, and 3 of paragraph B to satisfy that paragraph's requirements. Listing § 12.05.

Listing section 12.11 has its criteria set forth in paragraphs A and B. Listing § 12.11. To be found disabled at this step, a claimant's mental disorder must satisfy the requirements of *both* paragraphs A and B. *Id.* The ALJ found that Laterrance met the criteria in paragraph A of Listing 12.11. Tr. 18.

The paragraph B criteria in Listing 12.11 and the criteria in part 2 of paragraph B in Listing 12.05 are the same. The criteria relate to four broad areas of mental functioning used in the work setting. Listing § 12.00(A)(2)(b), (A)(3). Those four areas are the ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* The ALJ must evaluate the claimant's ability to function in each area and determine whether the claimant has no limitation or a mild, moderate, marked, or extreme limitation. Listing § 12.00(F)(2) (limitation rating scale and definitions). To meet the paragraph B criteria, a disorder must result in an extreme limitation in one or a marked limitation in two of the four areas of mental functioning. *Id.*

The ALJ found that Laterrance had a moderate limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. Tr. 19–24. The ALJ thus concluded that Laterrance did not satisfy the paragraph B criteria for either Listing. Tr. 22.

The court finds that the ALJ's step three determination is supported by substantial evidence. Laterrance's counsel argued at the administrative hearing that Laterrance met Listing § 12.05, but Laterrance's briefs before the court do not challenge any of the ALJ's findings at step three.

### D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC). 20 C.F.R. § 416.920(e) (citing 20 C.F.R. § 416.945). The RFC is a determination of the most a claimant can do despite all physical and mental limitations. 20 C.F.R. § 416.945(a)(1). The RFC determination is "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. §§ 416.920(e), 416.945(a)(1). The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c); *Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012) ("[T]he determination of residual functional capacity is the sole responsibility of the ALJ.").

The ALJ determined that Laterrance had the RFC to perform work at the medium exertional level limited to simple work. Tr. 24.

In support of his RFC finding, the ALJ cited and considered Laterrance's testimony, medical records, school records, consultative examinations, and the testimony of impartial medical experts. Tr. 24–29. The ALJ explained that he found that Laterrance's statements regarding the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 28.

The ALJ discussed various medical records. The records from when Laterrance was still a minor show that Laterrance was diagnosed with ADHD and that he had an IEP and accommodations in school. Tr. 24 (citing Tr. 576–589). He underwent a psychological evaluation when he was ten years old and was diagnosed with ADHD, a learning disorder, and oppositional defiant disorder. Tr. 24–25 (citing Tr. 607–609). The ALJ stated that Laterrance's Full Scale IQ score, which was based on that psychological evaluation, of 68 was of note because the

examiner stated that it was likely the test results provided an underestimate of his level of cognitive functioning and should be interpreted with caution. Tr. 25.

The medical evidence since Laterrance became an adult showed that Laterrance underwent a consultative psychological examination with Nicole Dorsey, Ph.D. on September 10, 2022. Tr. 25, 746. The ALJ discussed that Laterrance was diagnosed at the consultative examination with ADHD and borderline intellectual functioning. Tr. 25 (citing Tr. 746). The ALJ stated that Laterrance's mental status exam demonstrated that he had no more than mild to moderate limitations under the paragraph B criteria. Tr. 25 (citing Tr. 740–41).

The ALJ discussed Dr. Dorsey's functional capacity opinion. Tr. 25–26. Dr. Dorsey stated that Laterrance has the ability to learn simple one- or two-step tasks and that he would have difficulty sustaining concentration and persisting in work-related activity for extended periods of time, but he might be able to perform with frequent breaks. Tr. 746. Dr. Dorsey stated that Laterrance "might have some difficulty maintaining effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, but he would likely be more comfortable working around a small group of individuals." *Id*. Dr. Dorsey also stated that Laterrance would have difficulty coping with the pressures of a normal workplace environment. *Id*.

The ALJ also discussed Dr. Dorsey's medical source statement about Laterrance's ability to do work-related activities. Tr. 25–26. Dr. Dorsey found that Laterrance has a mild limitation in understanding and remembering simple instructions, carrying out simple instructions, interacting appropriately with supervisors and co-workers, and responding appropriately to usual work situations and changes in a routine work setting; a moderate limitation in the ability to make judgments on simple work-related

decisions and in interacting appropriately with the public; and a marked limitation in understanding and remembering complex instructions, carrying out complex instructions, and the ability to make judgments on complex work-related decisions. Tr. 747–48. The ALJ found that Dr. Dorsey's opinion is overall supported by her own exam findings except that her finding that Laterrance has a moderate limitation when interacting appropriately with the public is inconsistent with her own exam findings. Tr. 26.

The ALJ found Dr. Dorsey's opinion to be persuasive except as to her finding above. Tr. 26. The ALJ stated that limiting Laterrance to simple, repetitive work would reasonably accommodate his mental functional limitations that are supported by and consistent with the record. *Id.*

The ALJ discussed Dr. Cohen's testimony. Tr. 26–27. The ALJ stated that Dr. Cohen "surmised that the two [CE] evaluators did not find that the claimant suffers from a 12.05 intellectual disorder, but rather, they found that he suffers from borderline intellectual functioning under [L]isting 12.11, consistent with his diagnosis, despite the claimant's lower IQ scores." Tr. 26. The ALJ overruled Laterrance's counsel's objection to Dr. Cohen's testimony regarding the Listings and stated that "Dr. Cohen's opinion is consistent with the findings of the examination doctors in each of the exams." Tr. 27.

The ALJ considered Dr. Cohen's opinion that Laterrance would be limited to performing simple, repetitive tasks. Tr. 27. According to the ALJ, Dr. Cohen "noted that the only evidence he has in the case is from the claimant's two consultative examinations, and he has no psychiatric treatment records to review, to further evaluate the claimant's impairments." *Id.* The ALJ also considered counsel's cross examination of Dr. Cohen.

The ALJ found Dr. Cohen's testimony persuasive because it was supported by and consistent with the findings rendered by the

doctors who completed Laterrance's CEs. *Id.* The ALJ stated that "in the absence of psychiatric treatment records in this case, [Dr. Cohen] has no basis to disagree with the findings of Dr. Dorsey." *Id.*

The ALJ discussed testimony from Dr. Nancy M. Terrand, an impartial medical expert who testified at Laterrance's initial hearing. Tr. 27, 906. The ALJ found that Dr. Terrand's opinion was rendered prior to Laterrance attending his consultative examination in 2022 and that her opinion was rendered absent critical findings by Dr. Dorsey. Tr. 27–28. There were also no psychiatric treatment records for Dr. Terrand to consider. Tr. 28. The ALJ stated that he would not evaluate Dr. Terrand's opinion for persuasiveness and he would not discuss her testimony in his opinion. Tr. 27–28.

The ALJ found that, although there was no objective medical evidence that Laterrance had any significant functional limitations due to any physical impairments, Laterrance had severe mental impairments. Tr. 28. The ALJ also found that Laterrance did not appear to be receiving ongoing treatment for his ADHD, and that medication would likely improve his ADHD related symptoms. Tr. 28.

The ALJ discussed a psychiatric review technique form dated January 6, 2020, completed by Paul Cherry, Ph.D. Tr. 28. The ALJ found that, because no opinion was rendered in the form, there was no opinion to evaluate for persuasiveness. *Id.*

The ALJ considered opinions in the continuing disability review (CDR) determinations. Tr. 28–29. As to the CDR determination dated May 8, 2017, there was no reviewing doctor listed and Laterrance's whereabouts were unknown at that time. Tr. 28 (citing Tr. 101–106). As to the CDR dated July 17, 2019, Stephen Drake, Ph.D., determined that Laterrance had ADHD. Tr. 28–29. At that time, there was insufficient evidence to assess

16

Laterrance's condition, thus, the determination recommended cessation of benefits. Tr. 28–29 (citing Tr. 107–115).

The ALJ stated that his decision was consistent with the conclusions reached in the Notice of Disability Cessation and the Disability Hearing Officer's Decision. Tr. 28. The ALJ stated that his decision was inconsistent with the findings in the CDR initial and CDR reconsideration levels of disability determination, but that the CDR determinations were not persuasive because they were inconsistent with the objective medical record and were not supported by the record, other than the ultimate finding that Laterrance was no longer disabled. Tr. 29.

The ALJ's RFC finding is correct and supported by substantial evidence.

### i. The ALJ did not err in evaluating medical opinion evidence provided by Dr. Cohen and Dr. Dorsey.

Laterrance argues that the ALJ erred by finding that Dr. Cohen and Dr. Dorsey's opinions were consistent with each other and fully persuasive but then omitting from the RFC, without explanation, mental limitations that Dr. Dorsey recommended. ECF No. 14 at 11–15. For instance, according to Laterrance, the ALJ erred by failing to account for frequent breaks in the RFC, which Dr. Dorsey recommended. ECF No. 14 at 13–14. The premise of Laterrance's argument is that Dr. Cohen conceded during the hearing that he agreed with Dr. Dorsey's RFC findings, and thus Dr. Cohen's RFC opinions are identical to Dr. Dorsey's.

The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The ALJ, not the court, bears the responsibility of resolving conflicts in medical opinions. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). The regulations place the responsibility on the ALJ to assess a claimant's RFC

based on all the relevant evidence. 20 C.F.R. §§ 416.945, 416.946; *see also Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). The ALJ properly managed these responsibilities in assessing Laterrance's RFC, and substantial evidence supports his RFC assessment.

Dr. Cohen testified that the only RFC limitation he recommended was simple, repetitive tasks. Tr. 838. The ALJ included that limitation in the RFC. Dr. Cohen also testified that he agreed with Dr. Dorsey's RFC. Tr. 850–51. In the hearing, the ALJ suggested to Laterrance's counsel that he ask Dr. Cohen more questions about Laterrance's mental RFC limitations. Tr. 851. The ALJ pointed out that Dr. Cohen "obviously" does not agree with Dr. Dorsey's limitations because Dr. Cohen did not propose the same limitations himself and only recommended "one limitation, simple, repetitive tasks." *Id.* Laterrance's counsel responded that Dr. Cohen, by stating that he agreed with Dr. Dorsey's evaluation of Laterrance's RFC, agreed with Dr. Dorsey's limitations. Tr. 851–52. While this may have been a clever tactic, the ALJ saw through it. The ALJ was not required to accept a concession he clearly recognized was inaccurate.

Dr. Cohen stated incorrectly that he agreed fully with Dr. Dorsey's opinion, but he included only a portion of Dr. Dorsey's recommended limitations in his own opinion. The fact that Dr. Cohen apparently misunderstood the scope of Dr. Dorsey's RFC opinions does not preclude the ALJ from relying on Dr. Cohen's opinion.

The ALJ recognized both at the hearing and in his decision that there were differences between Dr. Dorsey's and Dr. Cohen's opinions. In his decision, the ALJ explicitly found Dr. Cohen's testimony persuasive and relied on it in forming his RFC determination. The ALJ explained that "Dr. Dorsey's opinion[s] regarding the claimant's mental functional limitations do support

limiting the claimant to simple, repetitive work, but no further mental functional limitations are warranted based on the review of the medical record, consistent with Cohen's testimony." Tr. 28.

The ALJ considered both opinions and reached a conclusion based on his review of the record. That is his role. The ALJ's decision was based on substantial evidence and the ALJ did not err in his analysis of Dr. Cohen and Dr. Dorsey's opinions. *Cf. Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (stating that the ALJ need not adopt an opinion verbatim to interpret a claimant's ability for work); *Taylor*, 706 F.3d at 603 (stating that what the plaintiff characterized as error was "actually the ALJ properly interpreting the medical evidence to determine [the claimant's] capacity for work").

### ii. The ALJ did not commit reversible error in evaluating Dr. Terrand's opinion.

Laterrance argues that the ALJ erred by failing to evaluate the supportability and consistency of Dr. Terrand's opinion as required under 20 C.F.R § 416.920c. ECF No. 14 at 16–17.

The ALJ is required to explain how he considered the factors of supportability and consistency when assessing a medical opinion's persuasiveness. 20 C.F.R. § 416.920c(b)(2). The supportability factor relates to how much the objective medical evidence and the medical source's explanations support the medical opinion while the consistency factor relates to the medical opinion's consistency with the evidence from other medical sources. 20 C.F.R. § 416.920c(c)(1)–(2). "An ALJ usually cannot reject a medical opinion without some explanation." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021).

Here, the ALJ disregarded Dr. Terrand's opinion. The ALJ stated that Dr. Terrand's opinion was rendered prior to Laterrance attending his consultative examination in 2022 with Dr. Dorsey. Tr. 27. Accordingly, Dr. Terrand's "opinion was rendered absent

the critical findings discussed by Dr. Dorsey[.]" Tr. 27–28. The ALJ did not consider the opinion of Dr. Terrand because her opinion was issued prior to receipt of critical new evidence in the case. That explains why the opinion is not supported by relevant evidence, but says nothing about whether the opinion is consistent with the other evidence in the record. The ALJ failed to articulate the consistency of Dr. Terrand's opinion and thus erred.

Although the regulations require the ALJ to articulate his consideration of the supportability and consistency factors, the failure to do so warrants relief from the decision only when the error has prejudiced the plaintiff. *See Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (quoting *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)) ("Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected.") "This Court requires . . . a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision." *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001) (citation omitted). "Prejudice can be established by showing that the additional considerations 'might have led to a different decision.'" *Mettlen v. Barnhart*, 88 F. App'x 793, 793 (5th Cir. 2004) (quoting *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)).

Laterrance argues that, had the ALJ properly considered Dr. Terrand's opinion, the ALJ would have found him disabled because the RFC would have included additional limitations that would have altered the analysis at steps four and five. ECF No. 14 at 17. The issue is not whether the result would be different had the ALJ adopted Dr. Terrand's opinion. The issue is whether the ALJ's consideration and articulation of the supportability of Dr. Terrand's opinion would have led to the ALJ adopting Dr.

Terrand's opinion, thus potentially leading to a different result. The court concludes that it would not.

The ALJ found that the 2022 consultative examination, which Dr. Terrand did not consider because it was conducted after her analysis, was critical in this case. Tr. 27–28. The ALJ found that Dr. Dorsey's opinions were largely persuasive and that Dr. Cohen's testimony interpreting the CE was persuasive. The ultimate RFC is consistent with Dr. Cohen's opinion. There is no reason to believe that the ALJ's consideration and articulation of the supportability of Dr. Terrand's opinion would have led to the ALJ adopting Dr. Terrand's opinion. There is also no reason to believe that any further discussion of consistency would have led to a different result.

### iii. The ALJ did not err in assessing the RFC as to Laterrance's ability to adapt and manage himself.

Laterrance argues that the ALJ erred by failing to account for his moderate limitations in adapting and managing himself when assessing the RFC. ECF No. 14 at 18–21. Laterrance argues that deficits in adapting and managing oneself would cause problems in areas such as responding to demands, adapting to changes, managing psychologically based symptoms, distinguishing between acceptable and unacceptable work performance, setting realistic goals, making plans independently of others, maintaining personal hygiene and attire appropriate to a work setting, and being aware of normal hazards and taking appropriate precautions. *Id.* at 19 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(E)(4)).

The ALJ must consider the limiting effects of all of an individual's impairments, even those that are not severe, in determining that individual's RFC. 20 C.F.R. § 416.945(e). As the court stated above, the ALJ considered Laterrance's mental

limitations in his RFC and relied on Dr. Cohen's testimony to conclude that the only necessary mental RFC limitation was simple, repetitive tasks. Tr. 28.

Dr. Cohen testified about Laterrance's limitations in adapting and managing oneself. Dr. Cohen testified that "[i]n adapting and managing self the claimant's able to make meals. They did attend college although they didn't do well, they bathe and dress themselves, they do chores, they drive a car, I'm going to call this moderately impaired." Tr. 837. The ALJ explicitly asked Dr. Cohen about Laterrance's abilities. Tr. 838–40. Dr. Cohen testified that there was insufficient evidence to find any issues related to: maintaining socially acceptable standards of neatness and cleanliness, responding appropriately to changes in the work setting, tolerating normal levels of stress, maintaining attention or concentration for extended periods at a simple level, performing tasks on a schedule, and sustaining an ordinary routine without special supervision. Tr. 838–40. Dr. Cohen stated that Laterrance could make simple decisions and judgments and that he was moderately impaired in making judgments. Tr. 840. Dr. Cohen also testified that there was no evidence that Laterrance would have trouble interacting appropriately with the public and that he was only mildly impaired in this regard. Tr. 840–41.

The ALJ found that limiting Laterrance to simple, repetitive work would reasonably accommodate his limitations that are supported by and consistent with the record. Tr. 26. The Court "may not reweigh the evidence ..., nor try the issues *de novo*, nor substitute [its] judgment for that of the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (citation omitted). The ALJ reasonably incorporated Laterrance's moderate limitation into his RFC, and his decision is supported by substantial evidence.

### E. Step Four

At step four, the ALJ determines whether the claimant can perform jobs he previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(f); *see also Perez*, 415 F.3d at 462. If the claimant can perform his past work, he is not disabled. 20 C.F.R. § 416.920(f). If the claimant cannot perform his past work, the ALJ proceeds to step five. *See* 20 C.F.R. § 416.920(g)(1).

The ALJ determined that Laterrance had no past relevant work. Tr. 29. This finding is supported by substantial evidence and is not in dispute.

### F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)); *see also* 20 C.F.R. § 416.920(a)(4)(v). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)); *see also* 20 C.F.R. § 416.920(g)(1).

The ALJ found that Laterrance could perform jobs that exist in significant numbers in the national economy. Tr. 29. The ALJ relied on the VE's testimony that an individual of Laterrance's age, education, work experience, and RFC would be able to work as a laundry worker, patient transporter, dining room attendant, flagger, usher, or automobile cleaner. Tr. 30; *see also* Tr. 857–867 (VE's relevant testimony).

Because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and Laterrance's attorney had the opportunity to cross-examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-five determination.

*See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross examination). Accordingly, the ALJ's findings at step five are supported by substantial evidence.

### 4. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c).

Accordingly, Laterrance's Motion for Summary Judgment, ECF No. 14, is **DENIED**; the Commissioner's Motion for Summary Judgment, ECF No. 17, is **GRANTED**; and the Commissioner's final decision is **AFFIRMED**.

A separate final judgment will be entered.

Signed at Houston, Texas on September 24, 2025.

_____

Peter Bray
United States Magistrate Judge